IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RONALD JACKSON, RUTH JACKSON, ROBERT MANNING, PATRICIA McGESHICK, LAWRENCE WETSIT, LANETTE M. CLARK, and BILL WHITEHEAD,<br><br>Plaintiffs,<br><br>vs.<br><br>THE BOARD OF TRUSTEES OF WOLF POINT, MONTANA, SCHOOL DISTRICT NO. 45-45A, MARTIN DEWITT, TRACY JUVE-MIRANDA, GLENN STRADER,<br><br>Defendant. | CV-13-65-GF-BMM-RKS<br><br>**FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ATTORNEY FEES** |

**I. Synopsis**

Plaintiffs are the prevailing party in a lawsuit that addressed mal-apportioned voting districts, which violated Plaintiffs' equal protection rights. Plaintiffs were entirely successful on one claim, and entirely unsuccessful on their second claim.

Plaintiffs are entitled to attorneys fees and costs by statute. However, they are not entitled to the amount requested because they did not show that all attorney

1

hours spent on the case were reasonable, and because they achieved only partial success. Plaintiffs should be awarded $135,921.61 in fees and costs.

## II. Jurisdiction

The district court has subject matter jurisdiction because this case presents questions of federal law under 42 U.S.C. § 1988 and U.S. Const. amend 14. 28 U.S.C. § 1331. Venue is proper in the District of Montana pursuant to 28 U.S.C. § 1391(b)(2), and in the Great Falls Division pursuant to Local Rule 1.2(c)(3) because the condition at issue is in Roosevelt County, Montana. The case is assigned to United States District Judge Brian Morris. Doc. 40. The case is referred to the undersigned to conduct hearings and submit proposed findings of fact and recommendations for the disposition of all motions excepted from the magistrate judge's jurisdiction by 28 U.S.C. 636(b)(1)(A). Doc. 23. A post-judgment motion for attorney's fees is excepted from 28 U.S.C. 636(b)(1)(A). *Estate of Conners v. O'Connor*, 6 F.3d 656, 658-659 (9th Cir. 1993).

## III. Status

The parties jointly submitted a proposed Consent Decree. Doc. 70. The District Court adopted and entered the Consent Decree. Docs. 77,78. Plaintiffs' moved for an award of attorneys fees on March 14, 2014. Doc. 71. The Motion is supported by a brief and affidavits. Docs. 72, 73, 74, 75. Defendants did not

respond to the motion, and the time to do so has passed. Local Rule 7.1(d)(1)(B) (providing 14 days for response to non-dispositive motions). However, the parties agreed in the Consent Decree that "any requests by Plaintiffs for costs and fees shall be determined by the Court." Doc. 70 at 8.

### IV. Standards

In an action to enforce 14th Amendment voting rights or other civil rights, the court has discretion to award the prevailing party attorney fees, expert fees, and other reasonable litigation expenses. 42 U.S.C. §§ 1973l(e); 1988. "A prevailing plaintiff in a § 1988 case "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)(quoting S. Rep. No. 9401011, p. 4(1976)).

**Uncontradicted motions**

Failure to file a response brief may be deemed an admission that the motion is well-taken. Local Rule 7.1(d)(1)(B). However, this does not relieve the court of its duty to independently analyze a request for attorney fees. When attorney fees are requested in a 42 U.S.C. § 1988 case:

> It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement. Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance

of the case.

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558-59 (2010).

**Lodestar**

The proper method of calculating an attorney-fees award, including in a civil rights case brought under § 1988, is the "lodestar" method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The "lodestar" method multiplies the hours reasonably expended by the prevailing party on the litigation by a reasonable hourly rate. *Id.* That total can then be adjusted if warranted under the circumstances of the case. *Id*.

**Billing rates**

An attorney's hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The party seeking fees has the burden of proving the reasonableness of the claimed rates. *Id*. Rates must be based on the attorney's "experience, skill, and reputation." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g*. Determination of a reasonable hourly rate is not made by reference to rates actually charged by the attorney, but through consideration of the going rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id*.

**Reasonable hours**

The party seeking fees bears the burden of submitting detailed time records justifying the hours claimed. *Chalmers*, 796 F.2d at 1210. Contemporaneous records of hours worked are preferred in the Ninth Circuit. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).

In *Hensley*, the United States Supreme Court explained:

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

461 U.S. at 434 (internal citations omitted).

The court may credit that party with fewer hours if the time claimed is "excessive, redundant, or otherwise unnecessary." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988).

**Adjustment factors**

To determine if an adjustment is warranted, courts previously applied the 12 *Kerr*[1] factors. Those factors predate the lodestar calculation, however, and have

---

[1] *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (adopting analysis from *Johnson v. Georgia Highway Express, Inc*. 488 F.2d 714, 717-719 (5th Cir. 1974). The twelve are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other

5

been partially subsumed by it. The remaining *Kerr* factors – those not subsumed by the lodestar calculation – should be applied by the district court to determine if an adjustment is appropriate. *Morales*, 96 F.3d at 363-364.

Among the factors that must still be applied is "the results obtained." *Id.* at 364. This factor is particularly crucial where a plaintiff has succeeded on some, but not all, of the claims for relief. *Hensley*, 461 U.S. at 434. If claims are unrelated, attorney fees should not be awarded on the unsuccessful claims. *Id.* On the other hand, if the claims involve a common core of facts or a related legal theory, the attorneys' hours are not easily divided. "Instead, the District Court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Still, if a plaintiff has achieved only partial success, the lodestar calculation may be an excessive amount. *Id.* "This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith." *Id.* at 436.

## V. Facts

Plaintiffs are registered voters of Wolf Point, Montana. They reside in High

---

employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

School District 45A.  Doc. 70 at 2.  Plaintiffs filed suit, alleging the voting districts for District 45A were mal-apportioned, which deprived certain voters – particularly District 45A's Native American voters – of a representative votes.  Doc. 1 at 1.  Plaintiffs alleged two claims: 1) the mal-apportioned districts violated Plaintiffs' rights under the equal protection clause of the 14th Amendment of the United States Constitution, and 2) the mal-apportioned districts violated Section 2 of the Voting Rights Act.  Doc. 1 at 6.

The parties resolved the case by jointly submitting a proposed consent decree, doc. 70, which has been adopted, doc. 77.  The consent decree acknowledges that the voting districts are mal-apportioned, as alleged in Plaintiffs' first claim, and adopts a plan proposed by Plaintiffs to remedy the problem.  Doc. 70 at 5-7.  The consent decree discharges Plaintiffs' second claim as moot, and withdraws Plaintiffs' request to have District 45A bailed-in to coverage of under Section 5 of the Voting Rights Act, 42 U.S.C. §§ 1973c; 1973a(c).

Plaintiffs request an award of attorneys fees and costs totaling $196,025.92.

That amount consists of:

- $27, 200 for work by attorney James Taylor (136 hours at $200 per hour)

- $30, 850 for work by attorney Jon Ellingson (154.25 hours at $200 per hour)

- $121,762.50 for work by Laughlin McDonald (286.5 hours at $425 per hour)

- $1,666 for paralegal fees (19.6 hours at $85 per hour)

- $12,128.31 in costs to the ACLU Voting Rights Project

- $1,913.78 costs to ACLU of Montana

- $505.33 to Jon Ellingson

Doc. 71 at 2-3.

### VI. Analysis

The attorneys-fee analysis consists of three major steps. First, the court must determine if Plaintiffs are entitled to costs and fees. If so, the court must calculate the lodestar rate. Finally, the court must determine if it is appropriate to adjust the lodestar rate upward or downward.

#### A. **Plaintiffs are entitled to fees and costs**

Plaintiffs are prevailing parties for purposes of the fee award analysis because the litigation they initiated led to revised voting districts, as they requested. See *Hensley*, 461 U.S. at 433 (Plaintiffs are a prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."). No circumstances make an award of fees in this case unjust, and Defendants have not contested an award of attorneys fees.

#### B. **Lodestar rate**

The lodestar rate is the product of the hours reasonably expended multiplied by the reasonable hourly rate.

### i. Reasonable hours

Each of Plaintiffs' three attorneys submitted detailed records of the hours worked on this case, along with affidavits testifying that records were kept contemporaneously and the work performed was reasonably necessary to the preparation of the case. Docs. 73, 74, 75 and attached exhibits. Plaintiffs firmly established through these records and the sworn statements of their attorneys that they did, in fact, work the hours claimed.

It is not clear, however, that all those hours were reasonably necessary. Plaintiffs argue:

> An examination of the time records of Plaintiffs' counsel in this case reflects the absence of unreasonable duplication, and that Plaintiffs' lawyers were performing different tasks. The complexity of the litigation clearly warranted the use of more than one attorney. Plaintiffs note, for example, that the Defendants were represented by two attorneys.

Doc. 72 at 18.

While the nature of this case certainly necessitated significant pre-litigation investigation, the litigation itself was uncomplicated. Defendants conceded mal-apportionment early on and expressed a willingness to work with Defendants toward an appropriate remedy. It is not evident from the Plaintiffs' evidence that

three attorneys, a paralegal, and a research analyst were necessary to resolve an issue that was essentially undisputed.

Contrary to Plaintiffs' assertion, their time records do not demonstrate the absence of unreasonable duplication. Numerous entries reflect communications between the three attorneys, review of one another's work, travel time of all three attorneys, or simply state "Legal Research," which may or may not have been unreasonably duplicative. Docs. 73-1, 74-1, 74-2, 75-1. Therefore Plaintiffs failed to show the absence of unreasonable duplication, and more importantly, failed to satisfy their affirmative obligation to justify the hours claimed. *Chalmers*, 796 F.2d at 1210.

Because Plaintiffs provided detailed records and affidavits to support the hours claimed and Defendants have not objected, the multiplicity of attorneys merits only a slight reduction of hours. Each attorney's hours should be reduced by 10 percent. The following hours should be applied to the lodestar calculation:

- Jon Ellingson -138.83 hours
- Laughlin McDonald - 257.85 hours
- James Taylor - 122.4 hours

### ii. Reasonable rate

The hourly rates requested rates are reasonable.

Montana attorneys James Taylor and Jon Ellingson merit $200 per hour. While that amount is moderately above average for a Montana attorney, Mr. Taylor and Mr. Park both have many years of legal experience and credentials that demonstrate their skill and favorable reputation. They have established that they are attorneys of above-average skill, reputation, and experience in the community, and that $200 per hour is the prevailing rate in the community for attorneys of their order. Docs. 74,75.

Laughlin McDonald merits $425 per hour. Although that rate is somewhat high by general Montana standards, it is unremarkable for highly specialized attorney working in his area of expertise. Moreover, it is well within the customary range in Atlanta, Georgia, where McDonald primarily practices law. Doc. 72-3 (survey showing average rate billed by partner in Atlanta area was $482/hour); see also *Kersh v. Board of County Commissioners of Natrona County*, 851 F.Supp. 1541, 1543 (D. Wyo. 1994)(holding that out-of-town attorney should be compensated at his or her hometown rates if out-of-town counsel was reasonably necessary). Additionally, Mr. McDonald has shown that he has extraordinary experience and skill in voting-rights law, placing him in a category of attorneys for whom $425 per hour is a reasonable rate.

As requested by Plaintiffs, the following hourly rates should be applied to

the lodestar calculation:

- Jon Ellingson - $200

- James Taylor - $200

- Laughlin McDonald - $425

### iii. Lodestar total

Using the figures recommended above, the lodestar calculation is as follows:

Jon Ellingson: 138.83 hours reasonably worked multiplied by $200 per hour = $27,766

Laughlin McDonald: 257.85 hours reasonably worked multiplied by $425 per hour = 109,586.25

James Taylor: 122.4 hours reasonably worked multiplied by $200 per hour = 24,480

For a total lodestar calculation of **$161,832.25**.

**C.     A downward adjustment of the attorneys fees is appropriate**

The lodestar rate accurately reflects the time spent on this case by Plaintiffs' attorneys and fairly appraises their hourly rate, but should be reduced 25 percent because they were successful on only one of their two claims. See *Hensley* 461 U.S. at 434. Plaintiffs succeeded on Count I but agreed to dismiss Count II, abandoning their effort to subject Defendants to pre-clearance requirements of the Voting Rights Act.

Plaintiffs' Voting Rights Act claim prolonged and complicated the litigation

considerably. Defendants conceded from the start that the voting districts were mal-apportioned in violation of the equal protection clause. See doc. 36 at 3 (Defendant Pat Stennes' Answer to Amended Complaint, admitting mal-apportionment); doc. 35 at 4 (Defendants Bach et al. Answer to Amended Complaint, admitting mal-apportionment). Defendants were prepared to work with Plaintiffs to remedy the mal-apportionment. See docs. 41, 42 (Defendants' responses to Plaintiffs' motion for summary judgment). Plaintiffs' insistence on subjecting Defendants to the pre-clearance requirements of the Voting Rights Act became the primary impediment to resolution of the case.[2] But for Count II, Plaintiffs would have had no need to seek summary judgment (doc. 37) and incur the expenses of the attendant briefing and hearing. See doc. 38 (brief supporting summary judgment motion); doc. 44 (sjm reply brief); doc. 47 (minutes of summary judgment hearing). Without Count II, the parties may have also avoided expenses associated with mediation and reduced the costs of constructing a remedy.

Ultimately, Count II was completely unsuccessful. The consent decree

---

[2]Plaintiffs argued in the motion for summary judgment that Count II would be rendered moot by a favorable judgment on Count I, but continued to insist on a Count II remedy (bailing-in Defendants to coverage under Section 5 of the Voting Rights Act). Doc. 38 at 2. Thus, Plaintiffs' suggested willingness to dismiss Count II relatively early in the litigation was illusory.

13

jointly proposed by the parties and adopted by the District Court dismissed Count II, and specifically stated that "Plaintiffs have withdrawn their request that District 45A be bailed-in to coverage under Section 5 of the Voting Rights Act . . ." Doc. 78 at 11. Plaintiffs obtained a remedy exclusively on Count I, which Defendants agreed from the beginning was appropriate.

Plaintiffs' undoubtably plead and pursued Count II in good faith. They should not be punished for its failure. But neither should they be compensated for a claim that added significant time and complexity to the litigation, only to be abandoned. See *Hensley*, 461 U.S. at 434.

Count II constituted half of Plaintiffs' claims, but its existence probably did not double Plaintiffs' litigation costs because its factual basis largely overlapped with Count I. An award of 75 percent of the lodestar calculation would fairly compensate Plaintiffs for the attorneys fees necessary to Count I, without providing unwarranted compensation for the unsuccessful Count II.

The modified lodestar calculation is **$121,374.19**.

**D.     Costs**

    **i.     Paralegal fees**

Plaintiffs request $1,666 in costs for fees paid to paralegal Fred McBride. That amount represents 19.6 hours of work, compensated at $85 per hour.

Plaintiffs are entitled to expenses for paralegal hours. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989); *Perez v. Cate*, 632 F.3d 553, 556 (9th Cir. 2011). The rates for paralegals must be "consistent with markets rates and practices." *Id*. at 287-88.

Dr. McBride provided a short summary documenting his hours. Doc. 73-4. Mr. McDonald represents that Mr. McBride holds a doctorate in political science, and spent his 19.6 hours analyzing the election plan for the Board of Trustees to determine if it complied with legal requirements. Doc. 73 at 13. Mr. McDonald states that Mr. McBride's work would otherwise have been performed by an attorney at higher rates. Doc. 73 at 13.

The hours, while sparsely documented, do not appear unreasonable and have met with no objection from Defendants. The requested rate of $85 per hour is consistent with the market rate charged for paralegal work, particular a paralegal with advanced, specialized education in the relevant field. Plaintiffs should be awarded $1,666 for paralegal fees.

### ii. ACLU Voting Rights Project

Plaintiffs seek $12,128.31 for expenditures by the ACLU Voting Rights Project, consisting of $10,470 to Fred McBride, who was described above as a paralegal but also apparently performed 104 hours of research and analysis as an

independent contractor, at $100 per hour. Doc. 73-5 at 1. The balance is attributed to travel expenses incurred by Mr. McDonald. Docs. 73 at 13, 73-5 at 3-4.

The 104 hours of work by an independent contractor further suggest Plaintiffs' case was overstaffed. But that issue has been adequately addressed in the lodestar calculation, and in the absence of objection by Defendants, the undersigned cannot say the independent contractor's fees are unreasonable. Mr. McDonald's travel costs are well-documented and appropriate. These costs should be awarded.

### iii. ACLU of Montana

Plaintiffs request $1,913.78 for travel and litigation costs incurred by ACLU of Montana in relation to Jon Ellingson, who served as the organization's Legal Director for a portion of this case. Doc. 74-3. The costs are well-documented and reasonable. They should be awarded.

### iv. Jon Ellingson's costs

Mr. Ellingson left his position with ACLU of Montana while this case was pending, but continued to work on the case. Doc. 74 at 2. He covered his own expenses during that period. Plaintiffs request compensation for the costs he incurred, which amount to $505.33. Those costs are well-documented and reasonable. Doc. 74-2 at 4-5. They should be awarded.

## VII. Conclusion

Based on the above findings, the undersigned recommends the District Court GRANT Plaintiffs' Motion for Attorney Fees, doc. 71, and award Plaintiffs fees and costs as follow:

- Attorney fees: $121,374.19

- ACLU Voting Rights Project expenses: $12,128.31

- ACLU of Montana expenses: $1,913.78

- Jon Ellingson expenses: $505.33

Total fees and costs: **$135, 921.61**

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may serve and file written objections to the Findings and Recommendations within 14 days of their entry, as indicated on the Notice of Electronic Filing. 28 U.S.C. § 636(b)(1). A district judge will make a de novo determination regarding any portion of the Findings and Recommendations to

which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

Dated this 21st day of April, 2014.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge